# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

---

CLARENCE W.,[1]

                                                      Plaintiff,

    v.

                                                      5:18-CV-938(ATB)

COMMISSIONER OF SOCIAL SECURITY,

                                                    Defendant.

---

HOWARD D. OLINSKY, ESQ., for Plaintiff
DAVID L. BROWN, Special Asst. U.S. Attorney for Defendant

ANDREW T. BAXTER, U.S. Magistrate Judge

## MEMORANDUM-DECISION and ORDER

This matter was referred to me, for all proceedings and entry of a final judgment, pursuant to the Social Security Pilot Program, N.D.N.Y. General Order No. 18, and in accordance with the provisions of 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, N.D.N.Y. Local Rule 73.1, and the consent of the parties. (Dkt. Nos. 4, 5).

## I.   PROCEDURAL HISTORY

Plaintiff filed an application for Supplemental Security Income ("SSI") on October 15, 2013, alleging disability beginning August 21, 2012. (Administrative Transcript ("T") 13, 86, 178). The application was denied initially on April 8, 2014. (T. 114). Plaintiff requested a hearing, which was held on March 31, 2015, before

---

[1] In accordance with recent guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, which was adopted by the Northern District of New York in June 2018 in order to better protect personal and medical information of non-governmental parties, this Memorandum-Decision and Order will identify the plaintiff using only his first name and last initial.

Administrative Law Judge ("ALJ") John P. Ramos. (T. 26-55). In a decision dated July 8, 2015, the ALJ found that plaintiff was not disabled. (T. 10-20). Plaintiff filed a request for review, which the Appeals Council denied on November 4, 2015. (T. 1-5).

Plaintiff commenced an action challenging this decision in the Northern District of New York, Case No. 5:16-CV-25 (GLS). On March 29, 2017, Judge Sharpe vacated ALJ Ramos's decision, finding that the ALJ's failure to obtain a vocational expert's testimony was legal error warranting remand. (T. 579). In the same decision, Judge Sharpe rejected plaintiff's other contentions, finding that the ALJ had not committed any legal error with respect to weighing the medical evidence, and further finding that substantial evidence supported the ALJ's RFC determination. (T. 580). The case was ultimately remanded back to ALJ Ramos for proceedings compliant with the Appeals Council's directives. (T. 587-88).

During the pendency of plaintiff's federal action, he filed a subsequent claim for SSI benefits on December 18, 2015. (T. 483). Upon review of plaintiff's subsequent claim, the Social Security Administration found plaintiff to be disabled as of his application date. Thus, the SSI claim remanded back to ALJ Ramos only concerned the period between October 15, 2013 (plaintiff's original application date) and December 17, 2015. (*Id.*). ALJ Ramos conducted a new hearing on May 17, 2018, at which he heard testimony from plaintiff and Vocational Expert ("V.E.") David A. Festa. (T. 532-51). ALJ Ramos denied plaintiff's claim in a decision dated June 6, 2018 (T. 483-91).

## II. GENERALLY APPLICABLE LAW

### A. Disability Standard

To be considered disabled, a plaintiff seeking disability insurance benefits or SSI disability benefits must establish that he is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ." 42 U.S.C. § 1382c(a)(3)(A). In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner uses a five-step process, set forth in 20 C.F.R. sections 404.1520 and 416.920, to evaluate disability insurance and SSI disability claims.

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which meets or equals the criteria of an impairment listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience . . . . Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional

capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant can perform.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *see* 20 C.F.R. §§ 404.1520, 416.920. The plaintiff has the burden of establishing disability at the first four steps. However, if the plaintiff establishes that his impairment prevents him from performing his past work, the burden then shifts to the Commissioner to prove the final step. *Id.*

**B.  Scope of Review**

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supported the decision. *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013); *Brault v. Soc. Sec. Admin, Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); 42 U.S.C. § 405(g)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). It must be "more than a scintilla" of evidence scattered throughout the administrative record. *Id.* However, this standard is a very deferential standard of review " – even more so than the 'clearly erroneous standard.'" *Brault*, 683 F.3d at 448.

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams on behalf of Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). However, a reviewing court may not substitute its interpretation of the administrative record for that of the Commissioner, if the record

contains substantial support for the ALJ's decision. *Id*. *See also Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

An ALJ is not required to explicitly analyze every piece of conflicting evidence in the record. *See, e.g., Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983); *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981) (". . .we are unwilling to require an ALJ explicitly to reconcile every conflicting shred of medical testimony. . ."). However, the ALJ cannot "'pick and choose' evidence in the record that supports his conclusions." *Cruz v. Barnhart*, 343 F. Supp. 2d 218, 224 (S.D.N.Y. 2004); *Fuller v. Astrue*, No. 09-CV-6279, 2010 WL 5072112, at *6 (W.D.N.Y. Dec. 6, 2010).

### III. **FACTS**

As of the date of the first administrative hearing, plaintiff was 52 years old. (T. 31). After completing high school, plaintiff went on to study welding through BOCES. (T. 31-32). He also trained to become a school bus driver. (T. 32). Plaintiff was previously employed as a school bus driver, a cemetery maintenance worker, and a farm worker. (T. 32-35). He stopped working because he could not keep up with the pace, and consequently received public assistance for his rent, food, and heating. (T. 35-36). He lived alone, in a trailer on his brother's property. (T. 41). Although he was able to put his van "on the road" in order to get to the administrative hearing, plaintiff testified that he had lacked transportation for several years. (T. 42). He relied on friends and Medicaid transports in order to leave his home. (*Id.*).

Plaintiff suffered from asthma since birth. (T. 39-40). His condition was aggravated by pollen and cold, damp conditions. (T. 40). He also suffered from high

5

blood pressure, and experienced daily chest pain. (T. 39, 47-48). Plaintiff's arthritis caused him significant back, shoulder, and hand pain. (T. 42-43). Sitting and standing for prolonged periods was painful. (T. 48-50). At times, his arthritis also made it difficult to grip, button, etc. (*Id.*). Plaintiff testified that he was not satisfied with the quality of his past medical care, and had trouble retaining many of his medical providers. (T. 53-54).

At home, plaintiff struggled with his breathing. (T. 44). He generally spent the day on his couch watching TV, because any other activity generated chest pain. (T. 44-45). His brother shoveled the snow around his trailer. (T. 45). Plaintiff could cook "simple" things, such as eggs, potatoes, and chicken. (T. 47).

## IV. THE ALJ'S DECISION

In his decision on remand, the ALJ first found that plaintiff had not engaged in substantial gainful activity since October 15, 2013, the application date. (T. 486). At step two of the sequential analysis, the ALJ found that plaintiff had the following severe impairments: mild chronic obstructive pulmonary disease (COPD), bronchospastic airway disease, osteoarthritis, and obesity. (*Id.*). The ALJ also found that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of a Listed Impairment at step three of the sequential analysis. (*Id.*). In making this decision, the ALJ considered Listing 3.03 (Asthma). (*Id.*).

The ALJ then found that plaintiff had the residual functional capacity to perform less than a full range of light work,

6

> with ability to lift/carry 20 pounds occasionally and 10 pounds frequently; sit 6 hours in a routine 8-hour workday; and stand/walk 4 hours total in such a workday; with occasional reaching in all directions; frequent pushing/pulling; occasional handling, fingering, feeling with either hand; frequent use of foot controls; occasional use of ladders or scaffolds but never climbing ramps or stairs; with frequent balancing and stooping, but occasional bending, kneeling and crouching, and never crawling; and no work around unprotected heights, but frequent work around moving parts or exposure to humidity or wetness; and no exposure to dust, odors, fumes and concentrated pulmonary irritants, but frequent exposure to temperature extremes and vibrations.

(T. 487). In making this RFC determination, the ALJ stated that he considered all of the plaintiff's symptoms, and the extent to which those symptoms could "reasonably be accepted as consistent with the objective medical evidence and other evidence," based on the requirements of 20 C.F.R. §§ 416.929 and SSR 16-3p. (*Id.*). The ALJ also stated that he considered opinion evidence in accordance with the requirements of 20 C.F.R. § 416.927. (*Id.*). Last, the ALJ found that plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the plaintiff's statements as to the intensity, persistence and limiting effects of those symptoms were not "entirely consistent with the medical evidence and other evidence in the record." (T. 488).

After considering the evidence and plaintiff's RFC, the ALJ found at step four that plaintiff was unable to perform his past relevant work. (*Id.*). The ALJ then turned to step five of the sequential analysis. The ALJ acknowledged that the plaintiff's ability to perform unskilled light work had been compromised by additional limitations. (T. 490). To determine the extent to which these limitations eroded the

7

unskilled light occupation base, the ALJ considered the testimony from the VE. (T. 490, 541-51). Based on the ALJ's hypothetical, the VE testified that there were several jobs that existed in significant numbers which could be performed by a person of plaintiff's age, education and vocational background. (T. 490). Thus, the ALJ found that plaintiff was not disabled. (*Id.*).

V. **ISSUES IN CONTENTION**

Plaintiff argues that the ALJ's RFC determination is "unsupported by substantial evidence," insomuch as the ALJ rejected the "mutually supportive opinions" of the examining sources of record, in favor of formulating the RFC "out of the inconsistent interrogatories of a non-examining, non-testifying medical expert." (Plaintiff's Brief ("Pl.'s Br.") at 1; Dkt. No. 10). Defendant argues that the ALJ's RFC determination is supported by substantial evidence. (Defendant's Brief ("Def.'s Br.") at 6-12; Dkt. No. 11). For the following reasons, the court agrees that substantial evidence supports the RFC for light work as modified by the ALJ.

VI. **RFC/WEIGHING EVIDENCE/TREATING PHYSICIAN**

    A.    **Legal Standards**

        1.    **RFC**

RFC is "what [the] individual can still do despite his or her limitations. Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis. . . ." A "regular and continuing basis" means eight hours a day, for five days a week, or an equivalent work schedule. *Balles v. Astrue*, No. 3:11-CV-1386 (MAD), 2013 WL 252970, at *2

(N.D.N.Y. Jan. 23, 2013) (citing *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96–8p, 1996 WL 374184, at *2)); *Babcock v. Berryhill,* No. 5:17-CV-00580 (BKS), 2018 WL 4347795, at *12-13 (N.D.N.Y. Sept. 12, 2018); *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 33 (2d Cir. 2013); *Stephens v. Colvin*, 200 F. Supp. 3d 349, 361 (N.D.N.Y. 2016).

In rendering an RFC determination, the ALJ must consider objective medical facts, diagnoses, and medical opinions based on such facts, as well as a plaintiff's subjective symptoms, including pain and descriptions of other limitations. 20 C.F.R. §§ 404.1545, 416.945. *See Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999) (citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990)); *Kirah D. v. Berryhill*, No. 3:18-CV-0110 (CFH), 2019 WL 587459, at *8 (N.D.N.Y. Feb 13, 2019); *Genier v. Astrue,* 606 F.3d 46, 49 (2d Cir. 2010). An ALJ must specify the functions plaintiff is capable of performing, and may not simply make conclusory statements regarding a plaintiff's capacities. *Roat v. Barnhart,* 717 F. Supp. 2d 241, 267 (N.D.N.Y. 2010); *Martone v. Apfel*, 70 F. Supp. 2d at 150 (citing *Ferraris v. Heckler*, 728 F.2d 582, 588 (2d Cir. 1984); *LaPorta v. Bowen*, 737 F. Supp. at 183, *Stephens v. Colvin,* 200 F. Supp. 3d 349, 361 (N.D.N.Y. 2016); *Whittaker v. Comm'r of Soc. Sec.*, 307 F. Supp. 2d 430, 440 (N.D.N.Y. 2004). The RFC assessment must also include a narrative discussion, describing how the evidence supports the ALJ's conclusions, citing specific medical facts, and non-medical evidence. *Natashia R. v. Berryhill*, No. 3:17-CV-01266 (TWD), 2019 WL 1260049, at *11 (N.D.N.Y. Mar. 19, 2019) (citing SSR 96-8p, 1996 WL 374184, at *7).

9

## 2. Weighing Evidence/Treating Physician

In making a determination, the ALJ weighs all the evidence of record and carefully considers medical source opinions about any issue. SSR 96-5p, 1996 WL 374183, at *2-3 (1996). Under 20 C.F.R. §§ 404.1527(e) and 416.927(e), some issues are not "medical issues," but are "administrative findings." The responsibility for determining these issues belongs to the Commissioner. *See* SSR 96-5p, 1996 WL 374183, at *2. These issues include whether the plaintiff's impairments meet or equal a listed impairment; the plaintiff's RFC; how the vocational factors apply; and whether the plaintiff is "disabled" under the Act. *Id.*

In evaluating medical opinions on issues that are reserved to the Commissioner, the ALJ must apply the factors listed in 20 C.F.R. §§ 404.1527(d) and 416.927(d). The ALJ must clearly state the legal rules that he applies and the weight that he accords the evidence considered. *Drysdale v. Colvin*, No. 14-CV-722, 2015 WL 3776382, at *2 (S.D.N.Y. June 16, 2015) (citing *Rivera v. Astrue*, No. 10 Civ. 4324, 2012 WL 3614323, at *8 (E.D.N.Y. Aug. 21, 2012) (citation omitted)).

"Although the treating physician rule generally requires deference to the medical opinion of a claimant's treating physician, . . . the opinion of the treating physician is not afforded controlling weight where . . . the treating physician issued opinions that are not consistent with other substantial evidence in the record . . . ." *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004); *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). If an ALJ decides not to give the treating source's records controlling weight, then he must explicitly consider the

four *Burgess* factors: "(1) the frequen[cy], length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist." *Estrella v. Berryhill*, 925 F.3d 90, 95-96 (2d Cir. 2019) (quoting *Burgess v. Astrue*, 537 F. 3d 117, 120 (2d Cir. 2008)). Should an ALJ assign less than controlling weight to a treating physician's opinion and fail to consider the above-mentioned factors, this is a procedural error. *Id.* at 96. It is impossible to conclude that the error is harmless unless a "searching review of the record . . . assures us that the substance of the treating physician rule was not traversed." *Id.*

**B. Analysis**

Plaintiff's only argument asserts that the ALJ erred in assigning "great weight" to the opinion of Charles Plotz, M.D., a non-examining source, and less weight to the opinions of Elke Lorensen, M.D., a consultative examiner, and Thomas Grady, M.D., plaintiff's cardiologist. (Pl.'s Br. at 8-15). The court first notes, and plaintiff does not appear to contest, the fact that no opinion of record was subject to the treating physician rule, nor entitled to controlling weight. Otherwise put, the record lacks an opinion from a treating "acceptable medical source," as defined in the regulations. *See* 20 C.F.R. §§ 404.1502(a); 416.902(a).

It appears that plaintiff struggled to keep a primary care physician, due in part, at least, to his noncompliance with treatment directives. (T. 341, 351, 368-370). Accordingly, plaintiff often presented to the emergency room and/or urgent care for his ailments. Plaintiff was eventually referred to Dr. Grady, a cardiologist, to address his

11

complaints of chest pain and hypertension. However, at the time Dr. Grady issued his Medical Source Statement ("MSS"), he had only examined plaintiff on one occasion. (T. 421-23). Thus, their treatment relationship did not amount to that which would require the ALJ to afford Dr. Grady's opinion controlling weight. *See Weathers v. Colvin,* No. 3:15-CV-575 (FJS), 2017 WL 177649, at *5 (N.D.N.Y. Jan. 17, 2017)(The ALJ gives a treating physician controlling weight because of the "continuity of treatment he provides and the doctor/patient relationship he develops[.]") (citing *Mongeur v. Heckler,* 722 F.2d at 1039 n.2); *Pritchett v. Berryhill*, No. 17-CV-719, 2018 WL 3045096, at *5 (W.D.N.Y. June 20, 2018) (listing cases).

If the opinion of a treating physician is either absent or deemed not controlling, the ALJ must weigh all the medical and other evidence in the record. *See* 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). Moreover, "[a]n ALJ is entitled to rely on the opinions of both examining and non-examining state agency medical consultants, because those consultants are deemed to be qualified experts in the field of social security disability." *Bump v. Comm'r of Soc. Sec.*, No. 5:15-CV-1077 (GTS), 2016 WL 6311872, at *4 (N.D.N.Y. Oct. 28, 2016). "Although an examining source is 'generally' afforded more weight than a non-examining source, an ALJ is allowed to afford a non-examining source more weight than an examining one." *Christy v. Comm'r of Soc. Sec.*, No. 5:13-CV-1552 (GTS/WBC), 2015 WL 6160165, at *9 (N.D.N.Y. Oct. 20, 2015). For example, an ALJ may assign greater weight to the opinion of a non-examining source when it is better supported by the record. *See Ridosh v. Berryhill*, No. 16-CV-6466L, 2018 WL 6171713, at *6 (W.D.N.Y. Nov. 26,

2018) ("a non-examining physician opinion may be entitled to more weight than the opinion of an examining physician . . . such as where the opinion of a treating or examining physician is contradicted by substantial evidence in the record.") (citation omitted).

In this case, non-examining consultant Dr. Plotz reviewed plaintiff's relevant medical history in June 2015. Upon his review of the records, including the MSS's from Dr. Lorensen and Dr. Grady, Dr. Plotz ultimately found that plaintiff could frequently lift and carry up to ten pounds, and occasionally lift and carry up to twenty pounds. (T. 473). Dr. Plotz further opined that plaintiff retained the ability to sit for six hours at a time, for a total of eight hours in an eight-hour work day; stand for four hours at a time, for total of seven hours in an eight-hour work day; and walk for three hours at a time, for a total of four hours in an eight-hour workday. (T. 474). Dr. Plotz indicated that plaintiff could frequently reach, handle, push and pull with both hands, as well as frequently operate foot controls with both feet. (T. 475). With respect to postural limitations, Dr. Plotz opined that plaintiff could frequently balance and stoop; occasionally climb stairs and ramps, kneel, and crouch; but never crawl or climb ladders or scaffolds. (T. 476).

In his written determination, the ALJ thoroughly discussed Dr. Plotz's opinion and afforded it "great weight," based on the physician's expertise, his opportunity to review the entire record, and the consistency between Dr. Plotz's opinion and plaintiff's conservative treatment history. (T. 488). Upon review of the aforementioned, the court finds that the ALJ's weighing of Dr. Plotz's opinion was

13

proper. As previously discussed, an ALJ may rely on the opinion of a non-examining medical source in formulating an RFC, because they are "deemed to be qualified experts in the field of social security disability." *Bump*, 2016 WL 6311872, at *4. Moreover, it is clear that the ALJ took into account the required considerations for weighing opinions from consultative sources. The ALJ thoroughly explained his reasoning for affording Dr. Plotz's opinion "great weight," and also explained why he found portions of the examining sources' opinions to be inconsistent with their examination findings, as well as the longitudinal medical evidence. For example, the ALJ noted that Dr. Lorensen's opined "marked limitations" for bending, lifting, reaching and squatting were inconsistent with his physical examination, which revealed "essentially normal" findings.[2] (T. 363-66, 488). The ALJ further noted that Dr. Grady's opinion that plaintiff's diagnosis of hypertension, for which Dr. Grady opined a "good" prognosis, and which otherwise appeared to be "generally well controlled," did not support Dr. Grady's opinion that plaintiff would be off-task 20% of the work-day, or absent three days a month. (T. 392, 489).

Moreover, the two examining source opinions are not as "mutually supportive"

---

[2]Dr. Lorensen did find plaintiff to have some limited range of motion in his lumbar spine (T. 356), which based on counsel's analysis varied between 5-20 degrees from "normal." (Plt.'s Br. at 14). He also found plaintiff's shoulder abduction to be 130 degrees bilaterally, hip flexion 50 degrees bilaterally, and knee flexion 75 degrees bilaterally. (T. 365). Otherwise, upon examination Dr. Lorensen noted that plaintiff appeared to be in no acute distress, with a normal gait and the ability to walk on his heels and toes without difficulty. (T. 364). Plaintiff's squat was 30% of full, he had a normal stance, and he did not require help changing for the exam or getting on and off the exam table. (*Id.*). He was able to rise from the chair without difficulty. (*Id.*). Plaintiff displayed full range of motion in his cervical spine, elbows, forearms, wrists and ankles. (T. 365). He also exhibited full strength in the upper and lower extremities, as well as full grip strength. (T. 365-66).

14

as the plaintiff suggests. For example, although Dr. Lorensen opined that plaintiff had "marked" limitations for lifting and carrying (T. 366), Dr. Grady determined that plaintiff could frequently lift up to ten pounds, occasionally lift up to twenty pounds, and rarely lift up to 50 pounds. (T. 391-92). Moreover, Dr. Lorensen opined that plaintiff had "marked" limitations for reaching (T. 366), however Dr. Grady determined that plaintiff could "frequently" reach. (T. 392). Thus, the ALJ did not improperly reject otherwise consistent evidence of plaintiff's extreme functional limitations to adopt the less restrictive opinion of Dr. Plotz.[3] On the contrary, the ALJ afforded the greatest weight to the opinion he found to be most consistent with plaintiff's treatment history, and the objective medical evidence.

To that end, objective evidence in the administrative record supports the ALJ's modified RFC for light work. Several of plaintiff's records from Dr. Dolorico-Magsino, his primary care physician at the time, indicate that plaintiff had no physical disability and exhibited normal activities of daily living. (T. 347, 357). An August 2013 chest x-ray indicated there was no acute cardiopulmonary disease, and an October 2014 stress test revealed normal results.[4] (T. 835-36). In August 2015, plaintiff

---

[3]In fact, the examining source's opinions are more consistent with the ALJ's modified RFC for light work than plaintiff appears to set forth. For example, Dr. Lorensen opined that plaintiff was moderately restricted in performing sustained physical activities, and as the Commissioner notes, the Second Circuit has held that moderate limitations are not inconsistent with being able to perform light work. *See White v. Berryhill,* 753 Fed. App'x 80, 82 (2d Cir. 2019); *see also Kociuba v. Comm. of Soc. Sec.*, No. 5:16-CV-0064 (GTS), 2017 WL 22210511, at *8 (N.D.N.Y. May 19, 2017).

[4]Dr. Grady later ordered that plaintiff retake the stress test, as the initial test appeared to be non-diagnostic, however it does not appear that plaintiff retook the test within the alleged disability period. (T. 421, 872).

established primary care at Fulton Family Medicine Practice PC, where he reported that, despite not taking his medication, his mood has been good and he was "overall doing well." (T. 815). He also reported that he was walking and lifting weights occasionally, for exercise. (T. 815). Plaintiff complained of occasional back pain to various providers. His physical examinations were inconsistent to the extent that they sometimes revealed "full" or "normal" range of motion (T. 330, 399, 402, 411, 816), and other times indicated a restricted range of motion in plaintiff's lumbar spine. (T. 343, 349, 353, 359). Further, as the ALJ observed, plaintiff's treatment for his various ailments was sparse and sporadic, with notably little compliance on the plaintiff's part.[5] *See Miller v. Comm'r of Soc. Sec.,* No. 5:16-CV-0942 (TWD), 2017 WL 4286295, at *5 (N.D.N.Y. Sept. 26, 2017) (citing *Navan v. Astrue,* 303 F. App'x 18, 20 (2d Cir. 2008) (summary order) (claims of total disability were undermined by the plaintiff's failure to seek regular treatment for his allegedly disabling condition); *Arnone v. Bowen,* 882 F.2d 34, 39 (2d Cir. 1989) (holding that while a failure to seek medical attention does not "necessarily" preclude a finding of disability, it "seriously undermines" a disability claim)).

In sum, plaintiff does not make any meaningful argument as to why Dr. Plotz's

---

[5]*See* T. 320-21 ("pt refuses all work up . . . left before receiving discharge paperwork . . . angry when told that he needed further evaluation."); T. 351 ("Patient however did not get any of the labs I ordered on him. He just went to Urgent Care because of pain in his ankles."); T. 400 (Indicating that plaintiff presented to the emergency room with complaints of shortness of breath and leg swelling, however adamantly refused recommended blood work and left against medical advice.); T. 370 ("Kindly dismiss patient from practice. Very non-compliant!"); T. 368 ("unable to redirect . . . he is not interested in seeing a back specialist."); T. 423 ("At this point, [plaintiff] does not wish to have his sleep apnea adequately treated." Plaintiff further declined to undergo stress echocardiogram or 48-hour Holter monitor despite cardiologist's recommendation.).

opinion should not be credited over the examining sources in the record, other than the conclusory assumption that the opinion of an examining source in entitled to more weight than that of a non-examining source. The ALJ properly weighed the opinions of record, and adequately explained the weight afforded to each. The court finds no legal error was committed by the ALJ, and his disability determination was supported by substantial evidence in the record.[6] *See Jones v. Berryhill*, No. 18 Civ. 8035, 2019 WL 5929438, at *4 (S.D.N.Y. Nov. 12, 2019) ("[If] the reviewing court finds substantial evidence to support the Commissioner's final decision, that decision must be upheld, even if substantial evidence supporting the claimant's position also exists.") (citing, *inter alia*, *Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990)).

**WHEREFORE**, based on the above, it is

**ORDERED**, that the Commissioner's decision is **AFFIRMED** and the complaint is **DISMISSED**, and it is

**ORDERED**, that judgment be entered for **DEFENDANT**.

Dated: January 22, 2020

_____
Hon. Andrew T. Baxter
U.S. Magistrate Judge

---

[6]The court's findings are consistent with the previous findings of Judge Sharpe, who also determined that the ALJ properly weighed the medical evidence and supported his RFC determination with substantial evidence. On remand, the ALJ was instructed to evaluate a closed disability period, and the administrative record consisted of the same evidence that was before Judge Sharpe, with the exception of some unremarkable post-decision treatment records (T. 815-58), and a Medical Examination for Employability Assessment prepared by a nurse practitioner after one examination, indicating that plaintiff suffered, at most, some moderate functional limitations. (T. 826-27). Otherwise, the only new information reviewed by the ALJ was the VE testimony, which was solicited to address the only error identified by Judge Sharpe.